UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MILDRED B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 19 CV 3532 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mildred B. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, the Court reverses the SSA's decision, denies the Acting Commissioner of Social Security's (Acting Commissioner) motion for summary judgment [22],[2] and remands this case to the agency for further administrative proceedings.

**Background**

In June 2015, plaintiff filed a Title XVI application for supplemental security income, alleging an onset date of September 25, 2013. [9-3] 19. The claim was denied initially and on reconsideration. [9-5] 120-24. Plaintiff then requested a hearing, which was held by an administrative law judge (ALJ) on January 3, 2018. [9-3] 43-84. In a decision dated March 29, 2018, the ALJ found that plaintiff was not disabled and denied her application. [*Id.*] 19-37. The Appeals Council denied review on February 25, 2019 [*id.*] 6-8, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955, 404.981. After obtaining an extension of time to file a civil action [*id.*] 1-2, plaintiff timely appealed to this Court. [1]. The Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, with the exception of citations to the administrative record [9], which refer to the page numbers in the bottom right corner of each page.

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

At step one of her written decision rejecting plaintiff's claim, the ALJ found that plaintiff has not engaged in substantial gainful activity since June 19, 2015, the date of her application. [9-3] 21. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: obesity, degenerative joint disease of the knees and shoulders, chronic obstructive pulmonary disease, depressive disorder, and anxiety disorder. [*Id.*] 21-22.

At step three, the ALJ ruled that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [9-3] 22-23. In so concluding, the ALJ found that plaintiff had a "moderate limitation" in interacting with others and limited her to "no interaction with the public, superficial interaction with coworkers and occasional interaction with supervisors." [*Id.*] 23. The ALJ also determined that plaintiff had a "moderate limitation" in "concentrating,

persisting, or maintaining pace[.]" [*Id.*]. Although "the record fail[ed] to disclose any allegation or finding of difficulty in pace or concentration," the ALJ found that plaintiff had "some deficit in persistence" given "her remarkable failure to attend her consultative exams." [*Id.*]. For that reason, the ALJ limited plaintiff to "simple, routine, repetitive tasks in a low stress job . . . defined as a job requiring few if any changes in the work environment and few if any simple, routine decisions." [*Id.*].

Before proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff can never climb ladders, ropes, or scaffolds; can frequently climb stairs and ramps; can frequently balance and stoop but only occasionally crouch and crawl; and requires the use of knee braces. [9-3] 23-24. The ALJ also concluded that plaintiff has the ability to understand, remember, concentrate, and persist to perform simple, routine, repetitive tasks in a low stress job defined as having few, if any, changes in the work environment and few, if any, routine decisions. [*Id.*] 24. Finally, the ALJ found that plaintiff can have brief superficial interaction with coworkers, occasional interaction with supervisors, and no interaction with the public. [*Id.*].

At step four, the ALJ found that plaintiff has no past relevant work. [9-3] 36. At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, such as production assembler, bottle line assembler, and linen grader. [*Id.*] 36-37. The ALJ accordingly found that plaintiff was not disabled. [*Id.*] 37.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. More specifically, plaintiff contends that the ALJ failed to explain why she did not adopt all of the mental and social limitations identified by Dr. Joseph Cools, the state agency reviewing consultant, despite giving his opinion "considerable weight." [16] 5-7. For the following reasons, the Court agrees with plaintiff that the ALJ's mishandling of Dr. Cools's opinion was reversible error and that the case must be remanded for further proceedings.[3]

I. **The ALJ Failed To Explain Why She Did Not Include A 1-2 Step Task Limitation In Plaintiff's RFC.**

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Id.* at 592.

---

[3] Given this ruling, the Court does not address plaintiff's other grounds for reversal.

### A. The ALJ Did Not Address Dr. Cools's Opinion That Plaintiff Was Limited to Performing 1-2 Step Tasks.

State agency reviewing consultant Dr. Cools found that plaintiff was "moderately limited" in her "ability to understand and remember detailed instructions." [9-4] 115. In the narrative portion of the mental RFC assessment that he prepared, Dr. Cools opined that plaintiff "is able to understand, learn and remember very simple instructions," that she "would be able to learn 1-2 step tasks," but would "have difficulty in retaining material over 3 steps." [*Id.*]. The ALJ stated that she gave "considerable weight to the opinions of the State agency non-examining consultants," including Dr. Cools. [9-3] 35. Nevertheless, the ALJ did not discuss Cools's opinion respecting 1-2 step tasks or explain why her RFC determination did not include this task limitation. *See* [*id.*] 23-36. Nor did the ALJ include the 1-2 step limitation in any of the hypothetical questions she posed to the vocational expert (VE), Dennis Gustafson. [*Id.*] 79-83. Instead, the ALJ accounted for plaintiff's mental impairments by limiting her to "simple, routine, repetitive tasks" in low-stress jobs that involved "few if any changes in the work environment and few if any simple routine decisions." [*Id.*] 24.

The Court concludes that the ALJ erred by failing to explain why she did not adopt Dr. Cools's 1-2 step task limitation. An ALJ "must explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Moira L. v. Kijakazi*, No. 19 C 2687, 2022 WL 846469, at *2 (N.D. Ill. Mar. 22, 2022) (internal quotation marks omitted). An ALJ "is not required to credit every part of a medical opinion just because he credits one part." *Stephens v. Colvin*, No. 14-cv-3117, 2016 WL 1271050, at *10 (N.D. Ill. Mar. 29, 2016), *aff'd*, 671 F. App'x 390 (7th Cir. 2016). But the ALJ was "required to–and did not–explain why [s]he adopted some of [Dr. Cools's] findings and rejected others." *Diaz v. Berryhill*, No. 16 C 11149, 2017 WL 4163959, at *2 (N.D. Ill. Sept. 20, 2017) (remanding for new RFC determination where ALJ gave "some weight" to state agency psychologists' opinions but did not explain why RFC omitted include their recommendation that plaintiff was limited to 1-2 step tasks); *accord Ghada G. v. Kijakazi*, No. 19 C 6306, 2022 WL 580782, at *7 (N.D. Ill. Feb. 25, 2022) ("[I]t is generally alright when an ALJ draws her hypothetical/residual functional capacity finding directly from the opinions of the state agency reviewing doctors. But the ALJ didn't do that here. She rejected the limitation to 'simple 1-2 step tasks' and didn't explain why. That has to be addressed on remand as well.") (internal citations omitted); *Martinez v. Berryhill*, No. 16 C 9240, 2018 WL 2984829, at *3 (N.D. Ill. Jun. 14, 2018) (remanding where ALJ gave great weight to agency consultants' opinions that plaintiff was limited to 1-2 step tasks, but "did not include a one- to two-step task limitation in his ultimate RFC determination or in his hypothetical questions posed to the VE" and instead "limited Plaintiff to simple, routine tasks").

4

The Acting Commissioner argues that the ALJ's failure to discuss the task limitation was not error because Dr. Cools supposedly "confirmed that simple, routine tasks would accommodate the limitation to 1-2 step tasks." [23] 4. Here the Acting Commissioner cites Cools's statement at the conclusion of the mental RFC assessment that "the claimant retains the capacity to perform simple routine tasks with adequate pace, persistence and concentration *given the above noted limitations*." [9-4] 117 (emphasis added). In the Acting Commissioner's view, this statement indicates that plaintiff was capable of performing simple, routine work despite "the above noted limitations" in Dr. Cools's RFC assessment, including the 1-2 step task limitation. [23] 3-4. The Court rejects this argument for two reasons. First, there is nothing in the ALJ's decision to indicate that the ALJ evaluated Dr. Cools's opinion and concluded that, notwithstanding the 1-2 step task limitation, plaintiff could perform simple, routine work. But "[r]eview of social security decisions is limited to the ALJ's rationales, and a decision cannot be upheld by giving it new ground to stand on." *Crystal M. on behalf of D.R. v. Kijakazi*, No. 21 CV 2240, 2022 WL 1567061, at *5 (N.D. Ill. May 18, 2022). Because the ALJ did not say that she believed Cools's 1-2 step task limitation was equivalent to, or synonymous with, a limitation to simple, routine tasks, the Court cannot affirm the ALJ's decision on that basis. Second, when Dr. Cools's RFC assessment is considered as a whole, it is apparent that Cools meant that "the above noted limitations" modified plaintiff's ability to perform simple, routine tasks–not that plaintiff could perform simple, routine tasks in spite of those limitations. Importantly, two of the "above noted limitations" were either more restrictive than Cools's statement respecting simple, routine work or not encompassed at all by that statement. In the earlier section of his RFC assessment, Dr. Cools opined that plaintiff could remember, not "simple" instructions, but "very simple instructions." [9-4] 115. Cools also opined that plaintiff could "behave in a socially appropriate manner with only brief superficial contact with others" [*id.*] 117, but that limitation is not captured by Cools's statement that plaintiff could perform simple, routine tasks because that statement does not mention any social restrictions. Thus, Dr. Cools's conclusion that plaintiff could perform simple, routine tasks "given the above noted limitations" means that these limitations modified the kinds of simple, routine tasks that plaintiff could perform–and not that a limitation to simple, routine tasks captured all of the limitations that were identified in his mental RFC assessment.

The Acting Commissioner also argues that "case law supports that simple, routine, repetitive works accommodates limits to 1-2 step tasks." [23] 4. The Commissioner relies on *Collins v. Berryhill*, No. 17 C 3589, 2018 WL 3361847 (N.D. Ill. Jul. 10, 2018); *Pinkston v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1708, 2019 WL 5102743, at *2 (E.D. Wis. Oct. 11, 2019); and *Nicholas B. v. Saul*, Case No. 18-2217, 2019 WL 7500242 (C.D. Ill. Oct. 8, 2019). According to the Acting Commissioner, these cases held or recognized that "a limitation to simple, routine work can accommodate a limitation to 1-2 step tasks." [23] 5. However, the Court finds that these cases are all distinguishable for the same reason. In each case, a state agency

reviewing consultant or other medical source opined that the claimant could perform up to 3-step tasks; the ALJ accepted these opinions and gave them varying degrees of weight, but did not include an express task limitation in the RFC determination. *See Collins*, 2018 WL 3361847, at *2 (great weight to agency reviewer's opinion that claimant could "carry out and sustain performance of 1-3 step tasks"); *Pinkston*, 2019 WL 5102743, at *2 (accepting opinions that claimant "retained the capacity to understand, remember, carry out and sustain performance of one to three step tasks"); *Nicholas B.*, 2019 WL 7500242, at *4 (reviewing consultant found that claimant could "carry out and sustain performance of 1-3 step tasks"). The court in each case concluded that the ALJ's RFC determination adequately accounted for plaintiff's mental limitations, despite not adopting the exact language, including the 3-step task limitation, used by the medical source at issue. Unlike *Collins*, *Pinkston*, and *Nicholas B.*, however, there is no opinion evidence in this case that plaintiff was capable of performing 3-step tasks. Therefore, the holdings in those cases that a restriction to simple, routine work can accommodate a 3-step task limitation are irrelevant here because Dr. Cools opined that plaintiff could perform only 1-2 step tasks.

Finally, even if *Collins*, *Pinkston*, and *Nicholas B.* had some bearing here, the Court would decline to follow them. Instead, the Court is more persuaded by decisions from the Northern District of Illinois holding that "there is a significant difference between one- to two-step tasks and simple, routine, repetitive tasks." *Schlattman v. Colvin*, Case No. 12 C 10422, 2014 WL 185009, at *7 (N.D. Ill. Jan. 14, 2014). "One- to two-step tasks function as a term of art in the Social Security context: the Department of Labor's Dictionary of Occupational Titles . . . defines a Reasoning Development Level of 1 as the ability to apply commonsense understanding to carry out simple one- or two-step instructions." *Id.* (internal quotation marks and brackets omitted). "By contrast, Reasoning Development Level 2 requires the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* (internal quotation marks and bracket omitted). "Accordingly, a limitation to one or two step work restricts the person to a Level 1 Reasoning job under the DOT, whereas simple work may also include Reasoning Level 2 or higher." *Deborah B. v. Kijakazi*, No. 20-cv-7729, 2022 WL 1292249, at *2 (N.D. Ill. Apr. 29, 2022). Thus, "a limitation to one-to-two step tasks is more restrictive than just the limitation to simple work[.]" *Id.*; *accord Wyatt v. Colvin*, Case No. 14-cv-3252, 2015 WL 3919058, at *8 (N.D. Ill. Jun. 24, 2015) (remand warranted where ALJ's "fail[ure] to use the psychologist's terminology" that plaintiff was limited to "one and two-step tasks" in hypothetical question to VE, and instead asking whether plaintiff could perform "simple work," may have "caused the expert to overstate the occupations for which Plaintiff was qualified"). Despite plaintiff's citation to *Schlattman* in her opening brief, and despite it addressed the exact question presented in plaintiff's appeal, the Acting Commissioner's brief does not discuss its holding that a limitation to 1-2 step tasks is more restrictive than a limitation to simple work.

6

In sum, the ALJ erred by failing to explain why she did not incorporate Dr. Cools's 1-2 step task limitation into plaintiff's RFC because that limitation was more restrictive than the limitation to simple, routine work. *See Deborah B.*, 2022 WL 1292249, at \*2; *Ghada G.*, 2022 WL 580782, at \*7; *Martinez*, 2018 WL 2984829, at \*3; *Schlattman*, 2014 WL 185009, at \*7

### B. The ALJ's Error Was Not Harmless.

Finally, the Acting Commissioner argues that any failure to discuss or adopt the 1-2 step task limitation was harmless. [23] 5. This is so, the Acting Commissioner contends, because even if the ALJ had adopted that task limitation, one of the jobs that the ALJ found that plaintiff could perform–bottling-line attendant–involved only 1-2 step tasks.

In this case, the ALJ found that plaintiff was capable of performing three jobs that existed in substantial numbers in the national economy. However, two of these jobs–linen grader and production assembler–are Reasoning Level 2 jobs. *See* Dictionary of Occupational Titles, Codes 361.687-022 (linen grader) & 706.687-010 (production assembler). These jobs would have been precluded had the ALJ adopted the limitation to 1-2 step tasks that Dr. Cools identified. *See Deborah B.*, 2022 WL 1292249, at \*2 ("all jobs cited by the VE have a Reasoning Level of at least 2 and, therefore, would be precluded by the limitation to one-to-two step work").

The third job identified by the ALJ–bottling-line attendant–is a Reasoning Level 1 job. *See* DOT Code 920.687-042, 1991 WL 687971. However, the Court agrees with plaintiff that the Acting Commissioner has not "produce[d] reliable evidence" that "a significant number" of bottling-line attendant jobs exist in the national economy, which is necessary to support the ALJ's finding at step five. *Deborah B.*, 2022 WL 1292249, at \*3. At step five, the ALJ based her determination that there were 250,000 bottling-line attendant positions in the national economy on VE Gustafson's testimony. [9-3] 38. But VE Gustafson never testified that 250,000 bottling-line attendant positions existed in the national economy. Rather, Gustafson testified that there were 250,000 jobs that "would fall under hand packaging work," and that the bottling-line attendant was "an example in that category." [*Id.*] 80. And as the following excerpt from Gustafson's testimony shows, the VE never identified how many bottling-line attendant positions existed in the national economy:

> Yes. What we're looking at are going to be non machine related manufacturing activities. I have approximate US numbers. Looking in the area of a job classified as production workers–essentially non machine related production jobs in manufacturing and the approximate US numbers at light are going to be 220,000. There is multiple DOT classifications of similar characteristics. An example in that category is going to be an assembler, production. And that's 706.687-010. *Jobs that*

> *would fall under hand packaging work, that's going to be–that will be in the vicinity of 250,000. And again, there is multiple DOT classifications with similar characteristics. An example in that category would be a bottling line attendant. And that is 920.687-042.* Another area would be production related inspection activity. The approximate numbers there would be around 90,000. And again, multiple classifications. An example would be a linen [grader].

[9-3] 80 (emphasis added).

Because Gustafson did not testify how many bottling-line attendant jobs existed in the national economy, there is no substantial evidence to support the ALJ's finding that jobs existed in significant numbers in the national economy that plaintiff could perform. Accordingly, the ALJ's decision must be reversed. *See Garza v. Berryhill*, No. 17 cv 4189, 2018 WL 2765921, at *3 ("At step five, the ALJ must provide substantial evidence that a person with Plaintiff's limitations could perform work that exists in substantial numbers in the national economy.").

## II. The ALJ Did Not Adequately Explain The Social Limitations She Included In Plaintiff's RFC.

Although the ALJ's failure to discuss Dr. Cools's 1-2 step task limitation alone warrants remand, the ALJ's failure to explain why she did not incorporate the social limitations that Dr. Cools identified into plaintiff's RFC is also grounds for a remand.

Dr. Cools opined that plaintiff was moderately limited in her ability to maintain socially appropriate behavior. [9-4] 116. Elaborating on that opinion, Cools stated that plaintiff "is able to relate adaptively to others only on a casual basis. She would be unable to sustain close, frequent, confrontational contact with others. She would behave in a socially appropriate manner with only brief superficial contact for others." [*Id.*]. The ALJ agreed that plaintiff "has a moderate limitation" in "interacting with others." [9-3] 23. But the ALJ did not discuss Dr. Cools's opinion even though she gave "considerable weight" to the opinions of the state agency reviewing consultants–and despite finding that evidence submitted after those opinions were issued "serve[d] to reinforce the opinions rather than to refute them." [9-3] 35. Instead, the ALJ determined that plaintiff could have "brief superficial interaction with coworkers, occasional interaction with supervisors but no interaction with the public." [*Id.*] 24.

The Court concludes that the ALJ erred by failing to explain why the social limitations she incorporated into plaintiff's RFC were less restrictive than those identified by Dr. Cools. In reaching her conclusion that plaintiff could have occasional interactions with supervisors, the ALJ did not address Dr. Cools's opinion that plaintiff's interactions with others need to be brief and superficial. Nor did the ALJ

8

identify other substantial evidence that might have supported her conclusion that plaintiff was capable of occasional interactions with supervisors. This was a critical error because the VE's testimony confirmed that, if plaintiff had been limited to only brief superficial contacts with supervisors, plaintiff would be precluded from working:

> Q: Hypothetical number four is going to be the same as three but interaction with supervisors would be only infrequent and superficial. Any work for such an individual in the national economy?
>
> A: Most likely not because supervisor interaction depends on job performance but it would normally exceed infrequent–
>
> Q: Okay.
>
> A: –or superficial.

[9-3] 81.

The Acting Commissioner's efforts to salvage the ALJ's decision lack merit. The Acting Commissioner reiterates that the ALJ was not obligated to adopt all of the limitations identified by Dr. Cools simply because she gave "considerable, but not penultimate, weight" to his opinion. [23] 6. That is true as a general proposition, but here–given the inconsistency between the limitation that Dr. Cools proposed and the limitation included in the RFC–the ALJ had to explain why she adopted some of Dr. Cools's findings, but rejected the limitation to brief, superficial interactions with others, which would include supervisors. *See Diaz*, 2017 WL 4163959, at *2. The Acting Commissioner also observes, *see* [23] 5-6, that the ALJ reviewed the record and found that plaintiff "is consistently described as pleasant, appropriate and cooperative," that her anger and irritability are "for the most part . . . well controlled," and that plaintiff's social limitations only infrequently "exacerbate[ ] to moderate" and only when she interacts with family. [9-3] 23. It is unclear to the Court how any of this evidence supports the ALJ's conclusion that plaintiff was capable of more than brief, superficial interactions with supervisors in a work setting. Rather, it appears that the ALJ cherry-picked evidence that she believed supported her conclusion respecting plaintiff's social limitations. *Cf. Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Indeed, there was ample evidence in the record–some of which the ALJ even mentioned–that was inconsistent with the evidence highlighted by the ALJ and appeared to support Dr. Cools's findings. For example, plaintiff's son testified at the hearing that his mother "has anger issues and did not trust anyone," "gets angry over the littlest thing," and "tries to get physical." [9-3] 25. In another part of her decision, the ALJ observed that plaintiff "had been

9

arrested . . . for throwing a man down the stairs" and "reported feelings of anger and wanting to hurt others." [*Id.*] 27. Finally, plaintiff testified at the hearing to the difficulties she had managing conflicts with other people while riding the bus to her therapy appointments. [*Id.*] 67-68. By citing this evidence, the Court does not mean to imply that the ALJ had to find that plaintiff's social limitations were as severe as Dr. Cools concluded. The Court cites this evidence only to underscore the importance of the ALJ's responsibility to consider all evidence in the record and to directly address the limitations identified by Dr. Cools, whose opinion, again, was given "considerable weight." The ALJ's oblique discussion of cherry-picked evidence of plaintiff's supposedly minor limitations in social interactions does not constitute substantial evidentiary support for holding that plaintiff could have occasional interactions with supervisors, particularly when the ALJ failed to mention Dr. Cools's contrary opinion.

## Conclusion

For the reasons set forth above, plaintiff's request to reverse the SSA's decision and remand this case to the agency [16] is granted, and the Acting Commissioner's motion for summary judgment [22] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 31, 2022**